IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| SAMYNTHIA BENETIZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 23-cv-03207-SRB |
| | ) | |
| NEW PRIME, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Before the Court is Defendant New Prime, Inc.'s ("Defendant") Motion for Summary Judgment. (Doc. #40.) For the reasons set forth below, the motion is DENIED.

I.  **FACTUAL BACKGROUND**

The following facts are undisputed or deemed undisputed by the Court. Plaintiff Samynthia Benetiz ("Plaintiff") does not controvert most of the facts set forth by Defendant. (*See* Doc. #47, p. 1.) As such, the following facts are primarily taken verbatim from Defendant's statement of facts without further quotation or attribution unless otherwise noted. Only those facts necessary to resolve the pending motion are discussed below, and those facts are simplified to the extent possible. Additional facts relevant to the parties' arguments are set forth in Section III.[1]

Defendant is a trucking company located in Springfield, Missouri. In January 2022, Plaintiff began truck driver training as Defendant's trainee. On March 30, 2022, Plaintiff began a second phase of training—known as TNT training—with trainer Oswald Thompson

---

[1] The purpose of this Order is to identify genuine issues of material fact found by the Court and to explain why those facts preclude judgment as a matter of law. The Court need not discuss all of the facts or all of the factual disputes because it is the jury's role to resolve disputed facts. As required by applicable law, disputed facts are viewed in the light most favorable to Plaintiff, the non-moving party. This discussion should not be construed as findings of fact.

("Thompson"). Plaintiff claims that on her first TNT training day, Thompson was flirtatious towards her. On the second day, March 31, Thompson made several inappropriate comments to Plaintiff. These comments included, "You want to sleep with your clothes off," that Plaintiff "could have sex with him," that if she "got cold" she "could get in bed with him," and that he had a "girl . . . on his truck that liked to sleep nude." (Doc. #41, p. 9.)[2] Plaintiff told Thompson that she was not interested.

Plaintiff also claims Thompson asked to have sex with her three or four times, and asked her to take a shower with him several times. Plaintiff claims that Thompson would not keep his hands to himself and that he hit ("popped") her on the "butt" and told her she had a "bad attitude" and needed a "spanking." (Doc. #41, p. 10.) Plaintiff claims that Thompson rubbed her leg from the passenger seat while she was driving, two or three times. Thompson also put his pelvis on Plaintiff when she was getting gas, but he only did that "once" because she "pushed him back." (Doc. #41, p. 10.) After Plaintiff pushed Thompson back, he asked if she was going to report him and she told him no, if he stopped, and kept his hands to himself. Thompson replied, "'Oh, I understand. You're just a good-looking woman. You got a nice butt,' this and that. 'You got nice boobs' and stuff like that. 'And I'm really attracted to you. I know I'm an older guy." (Doc. #41, p. 10.) Thompson also told Plaintiff that he had "kicked one girl off" of the truck as a trainer. (Doc. #44, p. 14.)

On April 2, 2022, after Plaintiff rejected his sexual advances, Thompson grabbed her arm hard enough to leave a bruise. Also on April 2, Plaintiff first reached out to Defendant regarding Thompson's behavior. Plaintiff did so by anonymously emailing Defendant's Female Driver Liaison, Brooke Mosley ("Mosley"). Plaintiff used an email that she had not provided to

---

[2] All page numbers refer to the pagination automatically generated by CM/ECF.

2

Defendant, her daughter's email address, lola.bb@aol.com. In that email, Plaintiff claimed she had been "sexual[ly] harassed" by her trainer but provided Mosley with no information from which Mosley could identify Plaintiff or the trainer. (Doc. #41, p. 11.) Mosley attempted to determine the author of the email but was unsuccessful. Mosley and Plaintiff subsequently exchanged emails regarding the situation, but Plaintiff remained anonymous.

Plaintiff did not identify herself to Mosley until a telephone call on April 11, 2022. Once Plaintiff had identified herself and her truck number, Defendant's security arrived at a Wendy's restaurant where Plaintiff was located. Security returned Plaintiff to the Salt Lake City terminal on April 11, 2022, and placed her in a bunkroom. On April 12, Mosley texted Plaintiff and told her she had been placed on guaranteed pay. Mosley asked Plaintiff if she would like "home time" or to be immediately assigned to another trainer; Plaintiff responded that she would like to go home. (Doc. #41, p. 17.) Thompson was terminated following Mosley's investigation.

On April 15, 2022, Plaintiff texted Mosley and asked about being assigned to a female trainer. On May 7, 2022, Plaintiff started training with Rebecca Aguirre ("Aguirre"). On May 22, 2022, Plaintiff claims she pulled the truck in the wrong way and when she asked Aguirre for help, Aguirre replied, "Well, what are you going to do when you're by yourself?" (Doc. #41, p. 19.) Plaintiff responded, "You're going to be the last person. I ain't going to call you b-i-t-c-h," and per Plaintiff, "it just escalated from there." (Doc. #41, p. 19.) Plaintiff claims she and Aguirre were "screaming back and forth," admits she called Aguirre "Bitch," that she told Aguirre she was "going to whoop [Aguirre's] butt" in response to Aguirre allegedly saying the same, that she threatened to "kick [Aguirre] in the chest," and "threaten[ed] to kick [Aguirre's] ass." (Doc. #41, p. 20.)

3

Plaintiff's legal counsel sent an email to Mosley at 2:50 p.m. on May 23, 2022, stating, "Please see the attached letter regarding the claims of our client, Samynthia Benitez. Thank you." (Doc. #41, p. 26.) The email contained an attachment which informed Defendant that Plaintiff had filed a Charge of Discrimination. Mosley forwarded the email and attachment to Defendant's General Counsel, Steve Crawford ("Crawford"), that same day, at 2:50 p.m. Mosley claims she did not open the attachment before forwarding it to Crawford. Crawford allegedly did not notify or tell Mosley prior to the date that Plaintiff was terminated that Plaintiff had filed a charge of discrimination.

Mosley investigated the incident between Plaintiff and Aguirre. Following her investigation, Mosley consulted with Steve Tassin ("Tassin"). Tassin decided to terminate Plaintiff, and Crawford approved that decision. At the time of Plaintiff's termination, Tassin was serving in his primary role of training manager. On May 25, 2022, Plaintiff's training was terminated based on "physical threats to [Aguirre], the statement from the trainer [Aguirre] alleging physical threats, and [Plaintiff's] refusal to respond or provide information on what occurred during th[e] incident." (Doc. #41, p. 25.) Defendant determined it could not "place [Plaintiff] in another trainer's truck when there is potential for physical violence." (Doc. #41, p. 25.) Defendant also disciplined Aguirre for her conduct. Aguirre was not allowed to train trainees after the incident for a period of time and would thus not benefit monetarily from having a trainee in her truck.

On July 13, 2023, Plaintiff filed this lawsuit against Defendant. Plaintiff asserts three claims under Title VII of the Civil Rights Act: Count I—Sexual Harassment/Hostile Work Environment; Count II—Sex Discrimination; and Count III—Retaliation. Defendant now moves

4

for summary judgment on Count I and Count IIII under Federal Rule of Civil Procedure 56.[3] Plaintiff opposes the motion, and the parties' arguments are addressed below.

## II. LEGAL STANDARD

Under Rule 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of identifying "the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (cleaned up). If the moving party makes this showing, "the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." *Id.* (quotation marks omitted). If there is a genuine dispute as to certain facts, those facts "must be viewed in the light most favorable to the nonmoving party." *Id.* "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* (quotation marks omitted).

## III. DISCUSSION

### A. Count I—Hostile Work Environment

In Count I, Plaintiff asserts a claim for hostile work environment based on Thompson's alleged sexual harassment. "Under Title VII, a hostile work environment claim is a type of discrimination under 42 U.S.C. § 2000e-(2)(a)." *Mahler v. First Dakota Title Ltd. P'ship*, 931 F.3d 799, 807 (8th Cir. 2019) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–23 (1993)). To avoid summary judgment on a hostile work environment claim, a plaintiff must present evidence that: "(1) she is a member of a protected class; (2) she was subject to unwelcome harassment; (3)

---

[3] The parties' briefs do not address Count II for sex discrimination, and this Order similarly will not discuss it.

5

the harassment resulted from her membership in the protected class; and (4) the harassment was severe and pervasive enough to affect the terms, conditions, or privileges of her employment." *Mahler*, 931 F.3d at 806 (quoting *Blake v. MJ Optical, Inc.*, 870 F.3d 820, 827 (8th Cir. 2017)). The fourth element "includes both objective and subjective components: an environment that a reasonable person would find hostile and one that the victim actually perceived as abusive." *Duncan v. General Motors Corp.*, 300 F.3d 928, 934 (8th Cir. 2002).

Defendant argues Plaintiff lacks sufficient evidence showing "that the alleged harassment affected a term, condition, or privilege" of her employment. (Doc. #41, p. 28.) Defendant contends that Thompson's inappropriate comments and repeated physical touching of Plaintiff is not "comparable to the types of conduct required to sustain a sexual harassment claim." (Doc. #41, p. 31) (citing cases).

Upon review, the Court rejects Defendant's argument. As detailed above, Plaintiff has presented more than enough evidence that Thompson's harassing and physical conduct was "severe and pervasive enough to affect the terms, conditions, or privileges of her employment." *Mahler*, 931 F.3d at 806. The Court agrees with Plaintiff that:

> the record establishes that plaintiff was subjected to dozens of acts of harassment over a two-week period including unwanted touching and repeated requests for sex . . . [Plaintiff had] to get . . . in the truck which was permeated with sexual comments, sexual advances, and physical threats to her based on her gender. This is sufficient for a reasonable jury to find the fourth element of plaintiff's claim of sexual harassment.

(Doc. #44, pp. 19-22).

Further, a reasonable person would find Thompson's alleged conduct hostile and Plaintiff perceived it as abusive. *Duncan*, 679 F.3d at 683. Under these circumstances, summary judgment is not warranted. *Compare Eich v. Bd. of Regents for Cent. Mo. State Univ.*, 350 F.3d 752, 759–60 (8th Cir. 2003) (finding sufficient evidence of sexual harassment based in part on

co-worker repeatedly grazing employee's breasts, frequently touching her hair, shoulders, and spine, constantly directing sexual innuendos at her and other women, along with other unwanted touching)[4] *with Duncan*, 679 F.3d at 935 (finding insufficient evidence based on "a single request for a relationship, which was not repeated when [plaintiff] rebuffed it, four or five isolated incidents of [employee] briefly touching [plaintiff's] hand, a request to draw a planter, and teasing in the form of a poster and beliefs for an imaginary [man hater's] club").[5] Consequently, Defendant's motion for summary judgment on this issue is denied.

Defendant alternatively argues that it cannot be vicariously liable for Thompson's conduct because he was not Plaintiff's supervisor. "[F]or claims of harassment by non-supervisory personnel, the plaintiff must show that her employer knew or should have known of the harassment and failed to take proper action." *EEOC v. CRST Van Expedited, Inc.*, 679 F.3d 657, 683 (8th Cir. 2012) (cleaned up). According to Defendant, summary judgment is thus warranted because it "responded immediately once [Plaintiff] identified herself. [Defendant], that very day, removed her from the truck, and put her in a safe location." (Doc. #41, p. 34.) Upon review, the Court finds Plaintiff has presented evidence sufficient to show that Thompson was her supervisor.

"To be considered a supervisor, the alleged harasser must have had the power (not necessarily exercised) to take tangible employment action against the victim, such as the authority to hire, fire, promote, or reassign to significantly different duties." *Weyers v. Lear Operations Corp.*, 359 F.3d 1049, 1057 (8th Cir. 2004) (cleaned up). Here, one of Defendant's

---

[4] Defendant argues that *Eich* does not foreclose summary judgment because the alleged conduct in that case occurred over a seven-year period. Although the length of time is different, the type of harassment in this case and in *Eich* is similar enough to support Plaintiff's cause of action.

[5] The planter in *Duncan* "was shaped like a slouched man wearing a sombrero. The planter had a hole in the front of the man's pants that allowed for a cactus to protrude." *Duncan*, 300 F.3d at 931.

7

documents states that a TNT Trainer is "an acting Manager and Supervisor for [Defendant] in that truck." (Doc. #44-10, p. 1.) Another document, titled "Expectations Agreement Between Lead Driver and Second Seat Drivers or Driver Traineees" states that the "lead seat [may] request[] that the second seat be taken off the truck[.]" (Doc. #44-9, p. 1.) A reasonable jury could find the latter document consistent with Plaintiff's testimony that Thompson said he "kicked one girl off" of the truck as a trainer. (Doc. #44, p. 14.) For these reasons, and the additional reasons stated by Plaintiff, the record supports a finding that Thompson was her supervisor.

When, as here, the evidence supports a finding that the alleged harasser was a supervisor, the "employer is vicariously liable for the harassment unless it can establish the affirmative defense defined in *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775, 807–08, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)." *CRST*, 679 F.3d at 683 (citations and quotation omitted) (cleaned up). To establish this defense, the employer must satisfy "two necessary elements: (a) that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.* (cleaned up).

Upon review, the Court finds disputed fact issues on both elements. Plaintiff has presented evidence that "[a]s a Trainer, [Thompson] was supposed to receive additional [sexual harassment] training in September 2021. His Master File shows he did not receive that training[.]" (Doc. #44, p. 11.) Defendant's reply contends that Thompson did receive this training, but that is a fact issue for the jury. In addition, Defendant's sexual harassment policy states that a harassed employee should first "Clearly communicate to the offender that his/her

actions are unwelcome by politely requesting they refrain from displaying inappropriate behavior and/or comments." (Doc. #44, p. 11.)

Based on these circumstances, the Court agrees with Plaintiff that:

> First, a reasonable jury could find that [Defendant] did not use reasonable care to prevent harassment. There is a factual dispute about whether Thompson received the separate Trainer/Supervisor Sexual Harassment Training. Second, plaintiff followed the sexual harassment policy – she politely asked Thompson to stop sexually harassing her. It did not work. A [reasonable] jury [could] reject this two-prong affirmative defense.

(Doc. #44, p. 24.) For these reasons, and the additional reasons stated by Plaintiff, Defendant is not entitled to summary judgment on Plaintiff's hostile work environment claim.

### B. Retaliation

Plaintiff's retaliation claim alleges, in part, that Defendant terminated her training because she filed a Charge of Discrimination. Title VII prohibits employers from retaliating against employees for engaging in protected conduct. *See* 42 U.S.C. § 2000e-3(a). The parties agree that Plaintiff presents no direct evidence of retaliation, and thus her retaliation claim is subject to the *McDonnell Douglas* burden-shifting framework. *See Mahler*, 931 F.3d at 805. Under this framework, a plaintiff must first present a prima facie case of retaliation. A plaintiff must show: (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) the "protected activity was a but-for cause" of the alleged adverse action. *Shirrell v. St. Francis Med. Ctr.*, 793 F.3d 881, 888 (8th Cir. 2015) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar¸* 570 U.S. 338, 339 (2013)).

If the plaintiff presents a prima facie case, the burden shifts "to the employer to articulate a legitimate, nondiscriminatory reason for its actions." *Johnson v. Securitas Sec. Servs. USA, Inc.*, 769 F.3d 605, 611 (8th Cir. 2014). If the employer meets its burden, "the burden shifts back to the employee, who must then prove the employer's asserted reason was merely pretext

9

for discrimination." *Id.* Pretext may be demonstrated by "show[ing] that the employer's explanation is unworthy of credence because it has no basis in fact" or "by persuading the court that a prohibited reason more likely motivated the employer." *Torgerson*, 643 F.3d at 1047 (cleaned up).

Here, Defendant argues Plaintiff lacks evidence that "her alleged protected activity was the but-for reason for the termination of her training." (Doc. #41, p. 35.) However, a causal connection may be established if the alleged retaliation is close in time to the protected activity. *See Sprenger v. Federal Home Loan Bank*, 253 F.3d 1106, 1113-14 (8th Cir. 2001). Plaintiff has produced evidence of a close temporal proximity and thus causation because she was terminated two days after emailing Defendant a Charge of Discrimination. Although it is disputed whether Mosley read the attachment to the email or attachment thereto, a reasonable jury could reasonably infer that she did under the circumstances presented here.[6] The Court further rejects Defendant's argument that "[t]he undisputed facts show that Benitez engaged in alleged protected activity after Prime began investigating the incident between her and Aguirre." (Doc. #47, p. 11.) In addition to the Charge of Discrimination, Plaintiff engaged in protected activity by reporting Thompson's alleged misconduct. Consequently, the Court finds that Plaintiff has presented a prima facie case of discrimination.

Defendant also argues it has presented evidence of a legitimate, non-retaliatory reason for Plaintiff's termination, and that Plaintiff lacks evidence of pretext. The Court finds that summary judgment is not warranted for these reasons. Plaintiff has presented evidence that

---

[6] Defendant's reply brief quotes *Kiel v. Select Artificials*, 169 F.3d 1131, 1136 (8th Cir. 1999) for the proposition that "more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation." (Doc. #47, p. 11.) But Defendant did not include the full quotation from *Kiel*, and *Kiel* did not lay down the bright-line rule suggested by Defendant. The full quote reads "***Generally***, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation." *Kiel*, 169 F.3d at 1136 (emphasis added).

Defendant "initially decided they would send her out with a third trainer after the incident with the second trainer."  (Doc. #44, p. 26.)  However, Defendant "decided to terminate her two days after they learned of the charge; they [allegedly] had no new information."  (Doc. #44, p. 26.)  In addition, "the Trainer [Aguirre] threatened plaintiff also; they engaged in identical conduct.  Yet only plaintiff, who had filed a charge of discrimination, was terminated. This is sufficient evidence to proceed to trial," and to create a genuine dispute regarding pretext.  (Doc. #44, p. 26.)  For these reasons, and the additional reasons stated by Plaintiff, Defendant is not entitled to summary judgment on Plaintiff's retaliation claim.

### IV.     CONCLUSION

Consequently, it is hereby ORDERED that Defendant New Prime, Inc.'s Motion for Summary Judgment (Doc. #40) is DENIED.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated:  September 3, 2024